

FLETCHER C. ALFORD (State Bar No. 152314)
fletcher.alford@dentons.com
LAURA L. GEIST (State Bar No. 180826)
laura.geist@dentons.com
DENTONS US LLP
525 Market Street, 26th Floor
San Francisco, CA 94105-2708
Telephone: (415) 882-5000
Facsimile: (415) 882-0300

Attorneys for Plaintiff
NETGEAR, INC.



ORIGINAL FILED

JUL 2 3 2013

Richard W. Wieking
Clerk, U.S. District Court
Northern District of California
San Jose

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NETGEAR, INC.,

                Plaintiff,

    vs.

ASUSTEK COMPUTER, INC.; ASUS
COMPUTER INTERNATIONAL, INC.; and
DOES 1 through 50, inclusive.

                Defendant.

CASE NO. C V-18-03405

COMPLAINT FOR DAMAGES,
INJUNCTIVE RELIEF AND
DECLARATORY RELIEF

JURY TRIAL DEMANDED

FILED UNDER SEAL

**COMPLAINT**

    Plaintiff NETGEAR, INC. ("NETGEAR"), by undersigned counsel, complains against

ASUSTEK COMPUTER, INC. ("ASUSTEK"), ASUS COMPUTER INTERNATIONAL, INC.

("ASUS COMPUTER") and DOES 1 through 50, inclusive, as follows:

**SUMMARY OF CLAIMS**

    1.    This action seeks permanent injunctive relief, damages and declaratory relief for

false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), damages

for tortious interference with NETGEAR's prospective business relations, injunctive relief for

unfair competition in violation of California Business and Professions Code § 17200, *et seq.*,

injunctive relief for false advertising pursuant to California Business and Professions Code §

17500, *et seq.*, damages and injunctive relief pursuant to Section 1 of the Sherman Antitrust Act,

1  15 U.S.C. § 1, and declaratory relief pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil

2  Procedure 57.

### PARTIES

4      2.    Plaintiff NETGEAR is a corporation organized and existing pursuant to the laws of

5  Delaware with its headquarters and principal place of business in San Jose, California. NETGEAR

6  is an established manufacturer of computer networking equipment and other hardware, including

7  wireless internet routers ("Wireless Routers"). NETGEAR is, and has been for years, the

8  preeminent domestic manufacturer and distributor of Wireless Routers, accounting for

9  approximately 40% of domestic home Wireless Router sales in 2012. NETGEAR's Wireless

10  Routers were and are marketed, promoted and sold in interstate commerce throughout the United

11  States.

12      3.    Defendant ASUSTEK is a corporation headquartered in Taipei, Taiwan. ASUSTEK is

13  a manufacturer, marketer and exporter of computer networking hardware including, among other

14  products, Wireless Routers.

15      4.    Defendant ASUS COMPUTER is a corporation headquartered in Fremont, California

16  and is a subsidiary of ASUSTEK. ASUS COMPUTER is an importer, marketer and seller of

17  computer networking hardware including, among other products, ASUSTEK's Wireless Routers.

18      5.    ASUSTEK and ASUS COMPUTER are direct competitors of NETGEAR with regard

19  to sales of Wireless Routers, both in California and throughout the United States. ASUSTEK's

20  and ASUS COMPUTER's Wireless Routers were and are marketed, promoted and sold in

21  interstate commerce throughout the United States. Defendants ASUSTEK and ASUS

22  COMPUTER are referred to collectively throughout this complaint as "ASUS" or "Defendants."

23      6.    NETGEAR is ignorant of the true names or capacities of the defendants sued herein

24  under the fictitious names Does 1 through 50. At such time as these defendants' true names

25  become known to NETGEAR, it will seek leave from this Court to amend this Complaint to insert

26  their true names and capacities.

27  ///

28  ///

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over NETGEAR's Lanham Act claim pursuant to 15 U.S.C. § 1121(a), subject matter jurisdiction over NETGEAR's Sherman Act claim pursuant to 15 U.S.C. § 4, supplemental jurisdiction over NETGEAR's state law claims pursuant to 28 U.S.C. § 1367, and jurisdiction over NETGEAR's declaratory relief claims pursuant to 28 U.S.C. § 1331.

8.    This Court has personal jurisdiction over ASUS because ASUS has purposefully availed itself of the resources of California such that there are sufficient minimum contacts with California to warrant the exercise of general and specific jurisdiction. Further, ASUS performed the unlawful activity complained of herein with the intent of harming the California business operations of NETGEAR. As was known by ASUS at all times relevant to this Complaint, NETGEAR is headquartered in California and is the primary market share holder and ASUS's most prominent competitor with regard to domestic sales of Wireless Routers.

9.     Venue is proper under 28 U.S.C. § 1391 because the claims arose in the City and County of San Jose.

## INTRADISTRICT ASSIGNMENT

10.     The events at issue in this case arose in the City and County of San Jose, NETGEAR's headquarters. Accordingly, the action should be assigned to the San Jose Division as set forth in Civil L.R. 3-2(e).

## STATEMENT OF FACTS

The FCC Regulates Wireless Routers

11.     The Federal Communications Commission ("FCC") has adopted rules governing the marketing, sale, operation and use of wireless devices operating in the 2.4 GHz and 5 GHz frequency bands, including Wireless Routers. Wireless Routers are governed by Part 15 of the FCC's rules, and they are "non-licensed" because their operators are not required to obtain a license from the FCC to use them.

12.     All Part 15 non-licensed transmitters, including the Wireless Routers manufactured by ASUS and NETGEAR, must be tested and authorized by the FCC before they may be legally

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

marketed, sold, operated or used in the United States. The testing and authorization requirements are designed to ensure that all non-licensed transmitters comply with the FCC's technical standards, including limits on output signal strength, and, thus, are capable of being operated with little potential for causing interference to other radio communications authorized by the FCC.

13.     The FCC's rules establish two ways to obtain authorization: certification and verification. Wireless Routers are subject to the "certification" process. The certification procedure requires that the manufacturer or seller perform tests on the Wireless Routers to measure the levels of radio frequency energy that the Wireless Routers radiate into the open air, and to confirm that they comply with all of the FCC's requirements, including limits on output signal strength. A description of the measurement facilities of the laboratory where the tests are performed must be filed with the FCC. After the tests have been performed, the applicant for authorization must produce and file with the FCC a report explaining in detail the testing procedures that were followed, the test results showing compliance with all pertinent technical standards, and additional information set forth in Part 2 of the FCC's rules, including photographs of the device, a technical description, and user instructions.

14.     FCC rules require that all certified transmitters bear two labels: an FCC Identifier ("FCC ID") label and a compliance label. The FCC ID consists of a three-character grantee code assigned permanently to a specific party by the FCC with an equipment which serves as an indication to consumers that the transmitter has been authorized by the FCC. The compliance label indicates to consumers that the transmitter was authorized under Part 15 of the FCC's rules, and that it may not cause, nor is it protected from, harmful interference.

15.     Once the report demonstrating compliance with the technical standards has been completed, and the compliance label and FCC ID label have been designed by the applicant, the applicant must file with the FCC a copy of the report, FCC Form 731, together with the applicable application fee.

16.     Upon receipt of the application, the FCC's lab reviews the report and may or may not request a sample of the transmitter to test. If the application is complete and accurate, and any tests performed by the FCC's lab confirm that the transmitter is compliant, the FCC will then issue

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1    a grant of certification for the particular transmission device. Neither the FCC nor any other

2    governmental or regulatory authority tests transmitters as a matter of course to verify that they

3    comply with FCC regulations or reported test results.

4         17.    The compliance label and the FCC ID label cannot lawfully be attached to any

5    device until a grant of certification has been obtained for the device. Once the FCC has issued the

6    grant of certification, the compliance label and the FCC ID label must be permanently affixed to

7    the device and readily visible to the purchaser at the time of purchase.

8         18.    The FCC's rules require that the manufacturer or seller obtain the FCC's prior

9    approval before making any power output or antenna changes to the transmitter after the FCC has

10    provided the grant of certification for the device.

11    IEEE 802.11 Standards For Local Area Networks And Metropolitan Area Networks.

12         19.    IEEE 802 refers to a family of standards by the Institute of Electrical and

13    Electronics Engineers ("IEEE") that concern local area networks and metropolitan area networks.

14    There are over two dozen such IEEE 802 standards, currently sequentially numbered from IEEE

15    802.1 through IEEE 802.25. The most widely used standards are for the Ethernet family, Token

16    Ring, Wireless LAN, and Bridging and Virtual Bridged LANs. The IEEE 802 family of standards

17    is maintained by the IEEE 802 LAN/MAN Standards Committee.

18         20.    IEEE 802.11 is a set of physical layer standards for implementing wireless local

19    area network ("WLAN") computer communications in the 2.4, 3.6 and 60 GHz frequency bands.

20    The base version of the standard was released in 1997 and has had many subsequent amendments,

21    typically denoted by an appended letter or number. These standards govern Wireless Routers and

22    other wireless network products using the Wi-Fi brand.

23         21.    IEEE 802.11n-2009 (commonly referred to as "IEEE 802.11n") is an amendment to

24    the IEEE 802.11-2007 wireless networking standard that built upon previous 802.11 standards by,

25    among other things, improving network throughput, standardizing support for multiple-input

26    multiple-output and frame aggregation, and improving security. NETGEAR and ASUS both

27    manufacture and distribute competing Wireless Routers governed by the IEEE 802.11n standard,

28    including models WNDR4500v1 (NETGEAR) and RT-N65U (ASUS).

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

-5-

22.     Proposed enhancements to IEEE 802.11n are under development as part of IEEE 802.11ac. The standards for IEEE 802.11ac have been in development since 2011, with final 802.11 Working Group approval and publication scheduled for early 2014. NETGEAR and ASUS both currently manufacture and distribute competing Wireless Routers governed by the IEEE 802.11ac prospective standard, including models R6300v1 (NETGEAR) and RT-AC66U (ASUS).

ASUS Files Certifications Of Compliance With The FCC And Receives FCC Approval For RT-N65U And RT-AC66U.

23.     ASUS has applied for and obtained FCC certification for multiple commercially available Wireless Routers, including models RT-N65U and RT-AC66U, as follows:

| Wireless Router | FCC Approval Date | FCC ID # |
|---|---|---|
| ASUS RT-AC66U | 5/30/12 | MSQ-RTAC66U |
| ASUS RT-N65U | 5/30/12 | MSQ-RTN65U |

24. The output signal strength and other measurements that ASUS represented to the FCC in its filings for ASUS's RT-N65U and RT-AC66U were performed by QuieTek Corporation ("QuieTek"), an electronic testing service located in Taipei, Taiwan. However, as further alleged hereinbelow, those represented measurements were either false and fraudulent when made, or ASUS modified the RT-N65U and RT-AC66U models after the testing was completed without seeking or obtaining prior authorization from the FCC as required by applicable FCC regulations.

25.     ASUS's RT-N65U and RT-AC66U models are commercially available to the general public through direct to consumer retailers such as Amazon, Best Buy, Fry's Electronics, and others.

26.     On information and belief, ASUS has wrongfully obtained or claimed FCC authorization through similar misrepresentations with regard to earlier generations of Wireless Routers.

/ / /

/ / /

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY RELIEF

ASUS's RT-N65U And RT-AC66U Do Not Comply With FCC Requirements.

27.     Contrary to ASUS's representations to the FCC, its Wireless Routers, including but not limited to models RT-N65U and RT-AC66U, produce outputs far in excess of those represented to the FCC, produce outputs that exceed FCC maximum output levels, unlawfully cause interference with adjacent bandwidths (potentially including critically important navigation, communications, and safety devices), and operate in a manner that has never been accurately reported to the FCC.

28.     In fact, ASUS Wireless Routers, including but not limited to models RT-N65U and RT-AC66U, do not comply with FCC required tests, including:

>     (a)     Operational Mode/Description; and

>     (b)     Peak Power Output Test.

29.     NETGEAR is further informed and believes, and on that basis alleges, that ASUS Wireless Routers, including but not limited to models RT-N65U and RT-AC66U, also fail the following FCC required tests:

>     (a)     Radiated Emission band Edge Test;

>     (b)     Power Density;

>     (c)     Radiated Emission;

>     (d)     RF Antenna Conducted Test; and

>     (e)     Occupied bandwidth.

30. On information and belief, pursuant to an explicit agreement with ASUS, QuieTek intentionally falsified the testing results for ASUS's RT-N65U and RT-AC66U in order to falsely obtain FCC certifications of compliance and enable the domestic sale of these Wireless Routers, or ASUS has since modified the FT-N65U and RT-AC66U without obtaining the necessary authority from the FCC. In fact, as was known by ASUS, neither the RT-N65U nor the RT-AC66U are FCC compliant.

NETGEAR's Competing Wireless Routers (WNDR4500v1 and R6300v1) Are FCC Compliant .

31.     All Wireless Routers manufactured and sold by NETGEAR in competition with ASUS, including but not limited to models WNDR4500v1 and R6300v1, comply with all

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415)882-5000

-7-
COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY RELIEF

1    applicable FCC regulations.

2    <u>ASUS Falsely Advertises And Promotes That Their Wireless Routers Are FCC Compliant.</u>

3         32.     Despite the fact that ASUS knows that its Wireless Routers are not FCC compliant

4    and thus may not marketed, sold, operated or used in the United States, ASUS made advertising

5    and promotional statements aimed at potential consumers falsely stating that its Wireless Routers,

6    including but not limited to models RT-N65U and RT-AC66U, are FCC compliant and may be

7    lawfully sold, operated and used in the United States. Not all the means through which ASUS

8    made such statements are known to NETGEAR at this time, but they include at least the

9    following:

10               (a)     An electronic version of the RT-N65U and RT-AC66U User Guide was

11   prepared by ASUS and directly placed online by ASUS and/or made available to third parties for

12   the purpose of being made available online. Making these User Guides available online was part

13   of ASUS's advertising and promotion scheme for making potential consumers aware of the

14   alleged qualities of these Wireless Routers. The User Guide for the RT-N65U and RT-AC66U has

15   an explicit and detailed statement of FCC compliance:

16               **Federal Communications Commission Statement**

17               This device complies with Part 15 of the FCC Rules. Operation is subject
                 to the following two conditions:
18

19               •       This device may not cause harmful interference.

20               •       This device must accept any interference received, including interference
                         that may cause undesired operation.
21

22               This equipment has been tested and found to comply with the limits for a
                 class B digital device, pursuant to part 15 of the FCC Rules. These limits
                 are designed to provide reasonable protection against harmful interference
23               in a residential installation.

24   (A true and correct copy of the RT-N65U User Guide is attached as Exhibit A to this Complaint.

25   (Accessed June 20, 2013 at http://www.manualslib.com/manual/414938/Asus-Rt-N65u-User-

26   Manual.html.). A true and correct copy of the RT-AC66U User Guide is attached as Exhibit B.

27   (Accessed June 20, 2013 at http://dlcdnet.asus.com/pub/ASUS/wireless/RT-AC66U/E7415__RT-

28   AC66U_Manual_English.pdf.).)

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

-8-

(b)     ASUS printed the FCC's logo on the outside of the box for the RT-N65U and RT-AC66U Wireless Routers. Below the FCC logo is printed "FCC ID" with ASUS's unique FCC compliance code for each product.

33.     The above representations are false, and were made with the intent to deceive potential consumers concerning the nature and quality of ASUS's RT-N65U and RT-AC66U Wireless Routers and the legality of selling, operating and using ASUS's RT-N65U and RT-AC66U Wireless Routers in the United States.

NETGEAR is Harmed By ASUS's Unfair Competition, False Representations and Other Unlawful Activity.

34.     Prior to the commencement of ASUS's unlawful and unfair practices as described herein, NETGEAR (through a combination of advertising, business planning, quality design and reliable manufacturing) had obtained a dominant domestic share of the Wireless Router market, accounting for approximately 40% of domestic home Wireless Router sales in 2012. A sizeable portion of NETGEAR's market share was comprised of brand-loyal, tech-savvy consumers familiar with NETGEAR's reputation for Wireless Routers of the highest available quality. Many of NETGEAR's sales were to these tech-savvy repeat customers who were familiar with the evolving 802.11 standards, anticipated NETGEAR's manufacture and release of an 802.11n and 802.11ac Wireless Router, and intended to purchase NETGEAR's 802.11n and 802.11ac Wireless Routers when released.

35.     However, through the unauthorized sale of ASUS's models RT-N65U and RT-AC66U and certain online and print reviews, as well as though word of mouth, ASUS's models RT-N65U and RT-AC66U were made available in the United States and proclaimed by some as being more powerful than NETGEAR's competing products, and thus providing a broader-reaching range and more stable wireless connection under certain circumstances. To the extent this is true, which NETGEAR neither concedes nor alleges, it is possible only because ASUS's RT-N65U and RT-AC66U are not FCC compliant and, among other things, exceed the FCC's established radiation standards as alleged hereinabove.

///

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

36.     As a result of ASUS's unlawful and unfair conduct as alleged above, NETGEAR has lost a large portion of its expected sales and has lost much of its existing market share for premium Wireless Routers. NETGEAR is informed and believes, and on that basis alleges, that its loss of sales and the corresponding drop in market share was caused by ASUS's unlawful sale of ASUS's models RT-N65U and RT-AC66U, the unlawfully powerful operation of ASUS's models RT-N65U and RT-AC66U, and ASUS's false representations of compliance with applicable FCC regulations.

37.     By: 1) failing to obtain FCC authorization; 2) exceeding FCC-imposed power limits; and 3) violating FCC-imposed requirements, ASUS's RT-N65U and RT-AC66U Wireless Routers create the risk of interfering with other devices in the same band and causing the very "harmful interference" that is disclaimed by ASUS in the RT-N65U and RT-AC66U User Guides and prohibited by FCC regulations. Further, by failing to obtain FCC authorization, exceeding FCC-imposed power limits and violating FCC-imposed requirements, these Wireless Routers have the potential of causing harmful interference in neighboring bands, including important navigational equipment as well as devices used by emergency response teams, such as police, fire and ambulance dispatchers. On information and belief, had consumers known of the risks associated with the purchase of ASUS's RT-N65U and RT-AC66U Wireless Routers, a substantial portion of consumers would have purchased NETGEAR's FCC compliant products in lieu of ASUS's unlawful and non-compliant Wireless Routers.

38.     Further, as indicated above, the FCC's rules require ASUS to obtain prior approval before making any power output or antenna changes to the transmitter after the FCC has provided the grant of certification for the device. Pursuant to these regulations, ASUS's RT-N65U and RT-AC66U Wireless Routers, and possibly others manufactured and sold by ASUS, do not have FCC approval to be sold to or used by consumers because they have different power output than was represented to the FCC. Pursuant to FCC rules, it is illegal for a consumer to operate a Wireless Router that is not properly certified by the FCC and complies with all FCC regulations.

39.     On information and belief, had consumers known that they would be in illegal possession of a Wireless Router that was not FCC certified and/or FCC compliant, a substantial

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1    portion of consumers would have purchased NETGEAR's FCC compliant and FCC certified

2    products rather than risk unlawful use of ASUS's non-compliant and uncertified Wireless Routers.

3        40.    In fact, because FCC compliance and a statement of FCC compliance is required on

4    the product, package and in the user guide for all domestically available Wireless Routers, without

5    ASUS's unlawful behavior, the RT-N65U and RT-AC66U would not even be available for

6    purchase in the United States.

7                                   **COUNT I**

8                    **False Advertising Under §43(a) of the Lanham Act**

9        41.    NETGEAR hereby repeats, repleads, and incorporates herein by reference as

10   though fully set forth each and every allegation contained in paragraphs 1 through 40 above.

11       42.    As alleged herein, ASUS has falsely stated in advertisements and promotional

12   materials that its RT-N65U and RT-AC66U model Wireless Routers comply with FCC

13   regulations. These false representations are made in each product's User Guide, which are made

14   available online for the purpose of advertising and promoting ASUS's RT-N65U and RT-AC66U

15   Wireless Routers, prior to purchase, for every potential customer interested in obtaining

16   information about the qualities of these products. Additionally, ASUS prints on the box for the

17   RT-N65U and RT-AC66U Wireless Routers the FCC logo and FCC compliance number and code,

18   falsely representing that the these Wireless Routers are FCC compliant.

19       43.    ASUS made such false statements willfully, intentionally, with full knowledge of

20   the falsity thereof, and with the intent to deceive and mislead potential purchasers.

21       44.    ASUS's acts constitute material false representations of fact in a commercial

22   advertisement or promotion which have deceived or are likely to deceive a substantial segment of

23   the present or potential purchases of Wireless Routers in violation of Section 43(a) of the Lanham

24   Act.

25       45.    ASUS has used and, on information and belief, intends to continue to use, these

26   false statements of fact in advertising and promotion in connection with the sale of the RT-N65U

27   and RT-AC66U Wireless Routers to deceive potential purchasers of these Wireless Routers about

28

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1 │ the quality of these Wireless Routers in order to improperly divert sales of Wireless Routers away

2 │ from NETGEAR's FCC compliant Wireless Routers.

3 │         46.    ASUS's false statements in advertising and promotion have caused irreparable

4 │ harm to NETGEAR and, absent the issuance of an injunction, will continue to cause irreparable

5 │ harm to NETGEAR. As such, NETGEAR has no adequate remedy at law.

6 │         47.    NETGEAR is informed and believes and on that basis alleges that, had the

7 │ purchasers of the RT-N65U and RT-AC66U Wireless Routers known that they are unlawful and

8 │ not FCC compliant, and would therefore interfere with adjacent bands and otherwise cause

9 │ harmful interference, a substantial portion of these consumers would have purchased NETGEAR's

10 │ FCC compliant products in lieu of the RT-N65U and RT-AC66U Wireless Routers. Further, had

11 │ consumers known that they could not lawfully use the ASUS Wireless Routers because were not

12 │ FCC certified and are not FCC compliant, a substantial portion of consumers would have

13 │ purchased NETGEAR's FCC compliant and FCC certified products rather than risk unlawful use

14 │ and operation of ASUS's non-compliant and uncertified Wireless Routers. In fact, had ASUS been

15 │ truthful and complied with FCC regulations, its RT-N65U and RT-AC66U Wireless Routers

16 │ would not be on the market because they are unlawful to sell. As such, ASUS's false statements

17 │ have caused great economic harm to NETGEAR in an amount to be determined at trial.

18 │                                    **COUNT II**

19 │                **Tortious Interference With Prospective Business Advantage**

20 │         48.    NETGEAR hereby repeats, repleads, and incorporates herein by reference as

21 │ though fully set forth each and every allegation contained in paragraphs 1 through 47 above.

22 │         49.    NETGEAR has an economic relationship with a large group of brand-loyal, tech-

23 │ savvy consumers familiar with NETGEAR's reputation for designing and manufacturing Wireless

24 │ Routers of the highest available quality. Many of NETGEAR's sales of Wireless Routers are to

25 │ such tech-savvy repeat customers who are familiar with the evolving 802.11 standards, anticipated

26 │ NETGEAR's manufacture and release of an 802.11n and, later, 802.11ac Wireless Router of the

27 │ highest available quality, and who, in fact, intended to purchase NETGEAR's 802.11n and

28 │ 802.11ac Wireless Routers. This existing economic relationship was created by NETGEAR

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

DENTONS US LLP
525 MARKET STREET, 26ᵗʰ FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

through a laborious combination of advertising, business planning, quality design and reliable manufacturing over the span of many years. As such, NETGEAR had a probability of future economic benefit from sales to NETGEAR's loyal customers, including but not limited to those who kept themselves apprised of emerging 802.11 standards and intended to purchase NETGEAR's 802.11n and 802.11ac Wireless Routers when released based upon NETGEAR's reputation and their prior dealings with the company.

50.     At all times relevant hereto, ASUS knew of the existence of the existing economic relationship between NETGEAR and the tech-savvy individuals that comprise NETGEAR's present and future customers for these products.

51.     ASUS knowingly, fraudulently, intentionally, and tortiously interfered with NETGEAR's relationship with its customers by, among other things, designing and manufacturing the RT-N65U and RT-AC66U Wireless Routers for sale in the United States that are not FCC compliant and fraudulently obtaining FCC certification for these Wireless Routers By fraudulently and illegally selling Wireless Routers in this manner, ASUS's RT-N65U and RT-AC66U were proclaimed by some reviewers and through word of mouth as being more powerful than NETGEAR's competing products, and thus potentially providing a broader-reaching range and more stable wireless connection under certain circumstances.

52.     As a result of ASUS's unlawful and unfair conduct as alleged above, NETGEAR has lost a large portion of its expected sales and has been irreparably harmed in its existing market share for premium Wireless Routers. NETGEAR has also suffered damage to its reputation with regard to currently available Wireless Routers and with regard to future generations of Wireless Routers. This loss of expected sales and the corresponding drop in market share was caused by ASUS's violation of FCC standards and ASUS's false representations of compliance as alleged hereinabove.

53.     As a proximate result of ASUS's tortious activity, NETGEAR has suffered economic harm in amount to be determined at trial.

/ / /

/ / /

1

## COUNT III

2

**Unfair Competition Pursuant to California Business and Professions Code § 17200, *et seq*.**

3          54.    NETGEAR hereby repeats, repleads, and incorporates herein by reference as

4    though fully set forth each and every allegation contained in paragraphs 1 through 53 above.

5          55.    ASUS has engaged in unlawful, unfair and fraudulent activities in a deliberate

6    scheme to unfairly compete with NETGEAR in the sale of Wireless Routers. Such activities

7    include, but are not limited to, knowingly manufacturing for sale Wireless Routers that are not

8    FCC compliant, and falsely advertising and promoting that the RT-N65U and RT-AC66U

9    Wireless Routers are FCC compliant, and, on information and belief, entering into an agreement

10   with QuieTek to produce reports falsely indicating FCC compliance.

11         56.    ASUS's action are forbidden by law, offend established public policy, are

12   unethical, oppressive, unscrupulous, substantially injurious to consumers, constitute false

13   advertising, and are likely to deceive the public. As such, ASUS's actions constitute unfair,

14   unlawful, and fraudulent business practices within the meaning of California Business &

15   Professions Code §§17200, *et seq*.

16         57.    As a proximate result of ASUS's actions constituting unfair competition,

17   NETGEAR has suffered injury in fact and economic harm in the form of diverted sales and lost

18   market share.

19         58.    ASUS's wrongful conduct has caused and will continue to cause great and

20   irreparable injury to NETGEAR's business in that NETGEAR has lost considerable sales, and will

21   continue to lose considerable sales, unless ASUS is enjoined from its unlawful, unfair, and

22   fraudulent business practices. NETGEAR has no adequate remedy at law for the injuries currently

23   being suffered in that ASUS will continue to wrongfully manufacture for sale, in California and

24   the rest of the United States, Wireless Routers that are not FCC compliant and will continue to

25   falsely represent that said Wireless Routers are FCC compliant. Accordingly, NETGEAR is

26   entitled to a permanent injunction against ASUS to enjoin it from such unfair, unlawful and

27   fraudulent business practices.

28   / / /

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

## COUNT IV

**False Advertising Pursuant to California Business and Professions Code § 17500, et seq.**

59.     NETGEAR hereby repeats, repleads, and incorporates herein by reference as though fully set forth each and every allegation contained in paragraphs 1 through 58 above.

60.     ASUS has falsely stated in advertisements and promotional materials that the RT-N65U and RT-AC66U Wireless Routers are FCC compliant. This false representation is made in each product's User Guide, which is made available online for the purpose of advertising and promoting these Wireless Routers to every potential customer interested in obtaining information about the qualities of ASUS's RT-N65U and RT-AC66U Wireless Routers. Additionally, the boxes and other packaging for RT-N65U and RT-AC66U Wireless Routers display the FCC logo and ASUS's FCC compliance numbers and codes, falsely representing that the RT-N65U and RT-AC66U Wireless Routers are FCC compliant.

61.     ASUS made such statements willfully, intentionally, with full knowledge of the falsity of such statements, and with the intent to deceive and mislead the potential purchasers of RT-N65U and RT-AC66U Wireless Routers.

62.     ASUS's acts constitute material false representations of fact in a commercial advertisement or promotion which have deceived or are likely to deceive a substantial segment of the present or potential purchasers of Wireless Routers in violation of California Business and Professions Code § 17500, *et seq*.

63.     ASUS has used and, on information and belief, intends to continue to use, these false statements of fact in connection with the sale of the RT-N65U and RT-AC66U Wireless Routers to deceive potential purchasers of said Wireless Routers about the quality of the Wireless Routers in order to improperly divert sales away from NETGEAR and towards ASUS.

64.     ASUS's false statements have caused irreparable harm to NETGEAR and, absent the issuance of an injunction, will continue to cause irreparable harm to NETGEAR. As such, NETGEAR has no adequate remedy at law.

/ / /

/ / /

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

## COUNT V

### Violation Of § 1 Of The Sherman Act

65.     NETGEAR hereby repeats, repleads, and incorporates herein by reference as though fully set forth each and every allegation contained in paragraphs 1 through 64 above.

66.     The conduct of ASUS and QuieTek, as described above, was performed pursuant to an unlawful conspiracy in restraint of trade or commerce in the sale of Wireless Routers in the United States. Specifically, such conduct constitutes an unlawful conspiracy to eliminate competition, including, but not limited to NETGEAR, by the use of unfair and unlawful means.

67.     On information and belief, ASUS and QuieTek knowingly and intentionally formed, engaged in, and operated pursuant to a conspiracy to unlawfully eliminate ASUS's competitors in the Wireless Router market, including, but not limited to, NETGEAR.  Such unlawful and anti-competitive conduct, includes, but is not limited to, ASUS's knowingly manufacturing for sale Wireless Routers that are not FCC compliant, and ASUS and QuieTek entering into an agreement by which QuieTek produced reports falsely indicating FCC compliance of certain of ASUS's Wireless Routers. On information and belief, ASUS and QuieTek were fully aware of and otherwise encouraged each act in furtherance of the conspiracy. On information and belief, ASUS and QuieTek performed these unlawful acts pursuant to a conspiracy with the specific intent to injure, cripple or eliminate competition in the Wireless Router market.

68.     As a result of this unlawful and anticompetitive conspiracy, ASUS has gained, and NETGEAR and other lawfully-acting competitors have lost, significant market share in the sale of Wireless Routers. On information and belief, this conspiracy has had an additional competition-reducing effect by discouraging lawful competitors from entering the Wireless Router market and otherwise harming and potentially eliminating competitors unable to lawfully compete with ASUS. This anticompetitive and unlawful conspiracy violates the rule of reason in that it was intended to, and has had the effect of, unreasonably restraining trade or, in the alternative, such activity is *per se* illegal. ASUS's and QuieTek's conduct is not justified by any legitimate, lawful business purpose.

///

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

69. This unlawful and anticompetitive conspiracy has caused irreparable harm to NETGEAR and other competitors in the Wireless Router market and, absent the issuance of an injunction, will continue to cause irreparable harm to NETGEAR. As such, NETGEAR has no adequate remedy at law.

70. This unlawful and anticompetitive conspiracy also caused great economic harm to NETGEAR in an amount to be determined at trial.

### COUNT VI

### Declaratory Relief

71. NETGEAR hereby repeats, repleads, and incorporates herein by reference as though fully set forth each and every allegation contained in paragraphs 1 through 70 above.

72. As alleged hereinabove, ASUS is knowingly and intentionally manufacturing for sale Wireless Routers that are not FCC compliant. An actual, present, justiciable controversy exists between the NETGEAR and ASUS because NETGEAR currently sells FCC compliant Wireless Routers that compete in the marketplace with ASUS's non-compliant and unlawful RT-N65U and RT-AC66U Wireless Routers.

73. Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. Section 2201 *et seq.*, NETGEAR seeks a judicial declaration that ASUS's RT-N65U and RT-AC66U Wireless Routers are not FCC compliant. This Court is vested with the power to declare and adjudicate the respective rights, duties and obligations of the parties with respect to the issues raised by this Claim For Declaratory Relief.

### JURY DEMAND

NETGEAR requests a trial by jury for each and every one of the above allegations, counts, claims and causes of action that is triable before a jury.

### PRAYER

**WHEREFORE**, NETGEAR prays for judgment as follows:

A. That ASUS, their agents, servants, employees, successors, assigns, and all those controlled by them or in active concert or participation with them, be permanently enjoined, to the fullest extent of this Court's jurisdiction:

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1.    From manufacturing, importing, distributing or selling Wireless Routers in these United States that are not FCC compliant, including, but not necessarily limited to, the RT-N65U and RT-AC66U Wireless Routers;

2.    From making false claims in advertising or promotion that their Wireless Routers, including but not limited to models RT-N65U and RT-AC66U, are FCC compliant.

B.    That ASUS be ordered to issue a recall of all of their non-compliant Wireless Routers, including but not limited to models RT-N65U and RT-AC66U sold in the United States.

C.    That ASUS be ordered to pay NETGEAR restitution and damages equal to all gains, profits, and advantages derived from their unlawful and unfair activity.

D.    That ASUS be ordered to pay to NETGEAR treble damages pursuant to 15 U.S.C. § 1117 for willful false advertising in violation of the Lanham Act.

E.    That ASUS be ordered to pay to NETGEAR treble damages pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15(a).

F.    That ASUS be ordered to pay NETGEAR prejudgment interest.

G.    That ASUS be ordered to pay NETGEAR's costs of suit and attorney fees under §43(a) of the Lanham Act.

H.    That the Court issue a judicial declaration that ASUS's Wireless Routers, including but not limited to models RT-N65U and RT-AC66U, are not FCC compliant and/or are unlawful to be sold and used in the United States.

I.    That the Court grant NETGEAR such other relief as the Court deems just.

Dated: July 22, 2013          DENTONS US LLP


By: _____

                    Fletcher C. Alford
                    Laura L. Geist

                    Attorneys for Plaintiff
                    NETGEAR, INC.

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000