1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NETGEAR, INC.,

          Plaintiff,

  v.

ASUSTEK COMPUTER, INC., *et al.,*

          Defendants.
_____/

No. C 13-3405 SI

**ORDER DENYING DEFENDANTS'
MOTION TO DISMISS**

Defendants' motion to dismiss the complaint is scheduled for a hearing on December 13, 2013. Pursuant to Civil Local Rule 7-1(b), the Court determines that this matter is appropriate for resolution without oral argument and VACATES the hearing. **The case management conference scheduled for 2:30 p.m. on December 13, 2013, remains on calendar.**

**BACKGROUND**

On July 23, 2013, plaintiff Netgear, Inc., filed this complaint against defendants ASUSTeK Computer, Inc. and ASUS Computer International alleging claims for false advertising under federal and state law, unfair competition, tortious interference with prospective business relations, and violations of the Sherman Act. The complaint alleges that Netgear is a manufacturer of computer networking equipment and other hardware, including wireless internet routers ("wireless routers"). Compl. ¶ 2. Defendant ASUSTeK is headquartered in Taipei, Taiwan, and is a manufacturer, marketer

United States District Court
For the Northern District of California

1   and exporter of computer networking hardware including, among other products, wireless routers. *Id*.

2   ¶ 3. Defendant ASUS Computer is a corporation headquartered in Fremont, California, and is a

3   subsidiary of defendant ASUSTeK (collectively "ASUS"). *Id*. ¶ 4. The complaint alleges that

4   defendants are direct competitors of Netgear with regard to sales of wireless routers, both in California

5   and throughout the United States. *Id*. ¶ 5.

6   According to the complaint, the Federal Communications Commission ("FCC") has adopted

7   rules governing the marketing, sale, operation and use of wireless devices operating in the 2.4GHz and

8   5 GHz frequency bands, including wireless routers. *Id*. ¶ 11.[1] Wireless routers are "non-licensed"

9   because their operators are not required to obtain a license from the FCC in order to use them. *Id*.

10  Wireless routers must be tested and authorized by the FCC before they may be marketed, sold, operated

11  or used in the United States. *Id*. ¶ 12. The complaint states that "[t]he testing and authorization

12  requirements are designed to ensure that all non-licensed transmitters comply with the FCC's technical

13  standards, including limits on output signal strength, and, thus, are capable of being operated with little

14  potential for causing interference to other radio communications authorized by the FCC." *Id*. The FCC

15  rules allow manufacturers or sellers of wireless routers to "certify" compliance with FCC limits.

16  *Id*. ¶ 13. "The certification procedure requires that the manufacturer or seller perform tests on the

17  Wireless Routers to measure the levels of radio frequency energy that the Wireless Routers radiate into

18  open air, and to confirm that they comply with all of the FCC's requirements, including limits on output

19  signal strength." *Id*. After the tests have been performed, the applicant must file a report with the FCC

20  detailing the testing procedures and test results, in addition to other information. *Id.* Upon receipt of

21  the application, "the FCC's lab reviews the report and may or may not request a sample of the

22  transmitter to test. If the application is complete and accurate, and any tests performed by the FCC's

23  lab confirm that the transmitter is compliant, the FCC will then issue a grant of certification for the

24  particular transmission device." *Id*. ¶ 16. According to the complaint, "[n]either the FCC nor any other

25

26  _____

27  [1] Although not alleged in the complaint, the FCC promulgated the rules and regulations pursuant to the Federal Communications Act of 1934, as amended 47 U.S.C. §§ 151 *et. seq* ("FCA").

28                                                                    2

United States District Court

For the Northern District of California

1  governmental or regulatory authority tests transmitters as a matter of course to verify that they comply

2  with FCC regulations or reported test results." *Id*.

3      The complaint alleges that ASUS applied for and obtained FCC certification for multiple

4  commercially available wireless routers, including its RT-N65U and RT-AC66U wireless routers.

5  *Id*. ¶ 23.  In order to obtain that certification, ASUS submitted to the FCC tests of output signal strength

6  performed by QuieTek Corporation ("QuieTek"), which is also located in Taipei, Taiwan.  *Id*. ¶ 24.

7  The complaint alleges that "those represented measurements were either false and fraudulent when

8  made, or ASUS modified the RT-N65U and RT-AC66U models after the testing was completed without

9  seeking or obtaining prior authorization from the FCC as required by applicable FCC regulations." *Id*.

10  The complaint alleges that the RT-N65U and RT-AC66U models "produce outputs far in excess of those

11  represented to the FCC, produce outputs that exceed FCC maximum output levels, unlawfully cause

12  interference with adjacent bandwidths (potentially including critically important navigation

13  communications, and safety devices), and operate in a manner that has never been accurately reported

14  to the FCC."  *Id*. ¶ 27.

15      The complaint alleges that ASUS has falsely stated in advertisement and promotional materials

16  that the RT-N65U and RT-AC66U wireless routers comply with FCC regulations.  *Id*. ¶ 32.   The

17  complaint also alleges that plaintiff has been harmed by defendants' false representations and unfair

18  competition because defendants' wireless routers "were proclaimed by some as being more powerful

19  than NETGEAR's competing products, and thus providing a broader reaching range and more stable

20  wireless connection under certain circumstances," and that "[t]o the extent this is true, . . . it is possible

21  only because ASUS's RT-N65U and RT-AC66U are not FCC compliant and, among other things,

22  exceed the FCC's established radiation standards . . . ."  *Id*. ¶ 35.  The complaint alleges that plaintiff

23  has lost market share and sales as a result of defendants' illegal conduct.  *Id*. ¶ 26.[2]

24  _____

25      [2]  In support of their motion to dismiss, defendants have submitted evidence which they contend
    shows that plaintiff has initiated, and is a party to, proceedings before the FCC regarding defendants'
26  allegedly unlawful wireless routers.  Defendants have also submitted evidence regarding QuieTek and
    QuieTek's test results, and another laboratory, Telefication B.V., which defendants assert reviewed
27  QuieTek's test results.  Plaintiff objects to this evidence as improperly outside the scope of a motion to

28                                                    3

United States District Court
For the Northern District of California

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal

---

dismiss, and also disputes that it has initiated formal proceedings with the FCC. According to plaintiff, the FCC does not have a formal complaint procedure for actions against non-common carriers such as defendants, and plaintiff asserts that instead it "simply informed the FCC that it intended to sue Defendants in this Court and provided the Agency with some of the evidence upon which the allegations of this case are based." Docket No. 35 at 23-25.

Defendants respond that this evidence is not improper, and that it was submitted "to highlight the misunderstandings and misstatements of the law and of the applicable FCC regulations that pervade Netgear's complaint and its opposition to the Motion to Dismiss." Docket No. 40 at 2:5-6.

The Court agrees with plaintiff that defendants' evidence is outside the scope of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). However, even if the Court considered defendants' evidence, it would not alter the Court's conclusion that plaintiff's claims are not barred or preempted, nor would it change the Court's analysis regarding primary jurisdiction, because as discussed *infra*, the Court finds that plaintiff's claims do not impermissibly intrude on the FCC's jurisdiction over radio frequency interference.

4

1    quotation marks omitted).

2

3                                    **DISCUSSION**

4          Defendants move to dismiss the complaint on the ground that plaintiff's claims are barred or

5    preempted by the FCC's exclusive authority to enforce its radio frequency emissions standards.

6    Defendants note that there is no private right of action for the violation of an FCC regulation, and they

7    contend that "[w]hile Netgear has not attempted to sue on these regulations directly, it has tried to

8    accomplish the same result by asserting other private causes of action, under both federal and state law,

9    whose proof depends entirely upon a threshold determination that the FCC regulations were in fact

10   violated." Docket No. 26 at 7:17-20. Defendants argue that only the FCC has the authority and

11   expertise to determine whether its radio frequency emissions standards and related regulations have in

12   fact been violated, and thus that the federal claims are barred and the state claims are preempted.

13

14   **I.       Federal claims**

15         Defendants argue that plaintiff's federal claims are barred under the reasoning of *Pom Wonderful*

16   *LLC v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012), and *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919 (9th

17   Cir. 2010). In both cases, the Ninth Circuit held that Lanham Act false advertising claims could not

18   proceed because those claims usurped the Food and Drug Administration's exclusive authority to

19   interpret and enforce its regulations implementing the Food, Drug and Cosmetic Act, 21 U.S.C.

20   § 337(a). In *PhotoMedex*, the plaintiff alleged that the defendant falsely advertised a surgical laser as

21   "FDA approved" when it had not in fact been approved. FDA regulations provided that once a medical

22   device had been approved by the FDA, "substantially equivalent" medical devices were also considered

23   approved. *Id.* at 925-26. The plaintiff filed an administrative complaint with the FDA alleging that the

24   defendant's new laser was not "substantially equivalent" to an earlier, approved laser. The FDA initially

25   failed to act on the complaint, and eventually determined that the laser at issue was "substantially

26   equivalent" to the earlier laser. *Id.* at 926-27. The plaintiff's Lanham Act claim alleged that prior to

27

28                                          5

United States District Court
For the Northern District of California

1
2
3
the FDA's determination of substantial equivalence, the defendant's representations about FDA approval were false.  *Id*. at 927-28.  The Ninth Circuit held that under those circumstances, the plaintiff's Lanham Act claim was barred:

4
5
6
7
8
> PhotoMedex is not permitted to circumvent the FDA's exclusive enforcement authority by seeking to prove that Defendants violated the FDCA, when the FDA did not reach that conclusion.  In a context where the statute and regulations place responsibility in the first instance on the manufacturer to determine whether its device is covered by a previous FDA clearance and permit marketing of the product without an affirmative statement of clearance by the FDA, it is impossible for PhotoMedex to prove that Ra Medical's device had not been cleared by the FDA when the FDA itself did not take that position.

*Id*. at 928.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
In *Pom*, the plaintiff juice manufacturer brought suit against a competing juice manufacturer under the Lanham Act, alleging that a juice prominently labeled "Pomegranate Blueberry Flavored Blend of 5 Juices" violated consumer expectations by containing only 0.3% pomegranate juice and 0.2% blueberry juice.  The Ninth Circuit applied *PhotoMedex*, and held that the "naming component of Pom's claim is barred because, as best we can tell, FDA regulations authorize the name Coca–Cola has chosen. The FDA has concluded that a manufacturer may name a beverage using the name of a flavoring juice that is not predominant by volume. . . . Thus, Pom's challenge to the name 'Pomegranate Blueberry Flavored Blend of 5 Juices' would create a conflict with FDA regulations and would require us to undermine the FDA's apparent determination that so naming the product is not misleading."  *Id*. at 1176-77.  The Ninth Circuit also held that the plaintiff's challenge to the defendant's labeling of the juice – namely the fact that "Pomegranate Blueberry" was in larger type than "Flavored Blend of 5 Juices" – could not proceed because "[i]n extensively regulating the labeling of foods and beverages, the FDCA and its implementing regulations have identified the words and statements that must or may be included on labeling and have specified how prominently and conspicuously those words and statements must appear."  *Id*. at 1177.

25
26
27
28
In both cases, the Ninth Circuit emphasized the importance of evaluating the particular circumstances of each case to determine whether a plaintiff's Lanham Act claim improperly intruded into the province of a federal regulatory agency.  *See Pom*, 679 F.3d at 1176 ("*PhotoMedex* teaches that

6

United States District Court
For the Northern District of California

the Lanham Act may not be used as a vehicle to usurp, preempt, or undermine FDA authority. That teaching, however, operates as a presumption or a general principle—not as an automatic trump or a firm rule. Our task in cases involving potentially conflicting statutes is 'to give as much effect to both statutes as possible.' *Schering–Plough*, 586 F.3d at 508. To do that, a court must focus on the circumstances before it to strike a balance that disrupts the two statutory schemes as little as it can. Thus, in *PhotoMedex*, while we resolved not 'to usurp the FDA's prerogative' to enforce the FDCA or to apply its own regulations, 601 F.3d at 928, we grounded that resolution in 'the particular circumstances of th[e] case,' *id.* at 922: the authority Congress entrusted to the FDA, the regulatory regime put in place by the FDA, the FDA's actions relevant to the plaintiff's claim, and other similar factors, *id.* at 922, 925–28."); *see also PhotoMedex*, 601 F.3d at 922.

The Court concludes that plaintiff's federal claims are not precluded under *PhotoMedex* or *Pom*. Unlike *Pom* or *PhotoMedex* where resolution of the plaintiffs' Lanham Act claims "would create a conflict with the FDA regulations and would require [the court] to undermine the FDA's apparent determination[s]," Netgear can prove its claims by showing that defendants falsely advertised that their products met FCC standards, either by submitting falsified test results or by altering their wireless routers after testing. Proving these allegations does not "risk undercutting [the agency's] expert judgments and authority," *Pom*, 679 F.3d at 1178, because plaintiff's allegations do not implicate the FCC's determinations or require the Court to interpret ambiguous FCC regulations. *Cf. PhotoMedex*, 601 F.3d at 924-25 ("To be clear, we do not suggest that the Lanham Act can never support private party claims involving FDA approval or clearance of drugs or medical devices. That is not the case. If, for example, it was clear that an affirmative statement of approval by the FDA was required before a given product could be marketed and that no such FDA approval had been granted, a Lanham Act claim could be pursued for injuries suffered by a competitor as a result of a false assertion that approval had been granted."); *see also Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 939 (8th Cir. 2005) (reversing dismissal of a Lanham Act false advertising claim alleging that a competitor falsely advertised that a product had been FDA approved because "[a] determination of whether Pennfield's product has received

FDA approval for certain uses turns on the meaning of agency publications in the Federal Register and Code of Federal Regulations. Interpretation of such materials is well within the 'conventional experience of judges.' The question of whether Pennfield's BMD has been approved as safe and effective is much different from the question of whether Pennfield's BMD should be approved as safe and effective, and it is only the latter that requires the FDA's scientific expertise.") (internal citation omitted); *cf. also All One God Faith, Inc. v. Hain Celestial Group, Inc.*, No. C 09-3517 SI, 2012 WL 3257660, at *9 (N.D. Cal. Aug. 8, 2012 (dismissing Lanham Act claim alleging that personal care products were falsely labeled as "organic" where the court would be required to interpret in the first instance evolving and ambiguous federal regulations).

## II.      State law claims

Defendants contend that plaintiff's state law claims are preempted under the doctrine of field preemption. "Field preemption, described as 'the pinnacle of federal preemption,' is a preemption approach 'so pervasive that Congress must have intended to leave no room for the states to supplement it.'" *Aguayo v. U.S. Bank*, 653 F.3d 912, 921 (9th Cir. 2011) (internal citations omitted). Defendants argue that "Netgear's state law causes of action are preempted under the doctrine of field preemption because Congress has shown a clear intent that the FCC should 'occupy the field' with respect to setting and enforcing technical standards for radio frequency emissions, in order to further the strong interest in uniformity of regulation and consistency in its application and enforcement." Docket No. 26 at 8:22-25. Defendants acknowledge that the FCA contains a general savings clause which provides that "[n]othing in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414. Nevertheless, defendants assert that "the FCC can fully occupy and displace state law from a particular *part* of its field (such as the regulation of radio frequency emissions) even if it does not completely preempt state law across its entire regulatory realm." *Id.* at 10:10-12 (emphasis in original). A s support, defendants cite *Freeman v. Burlington Broadcasters, Inc.*, 204 F.3d 311 (2d Cir. 2000), in

United States District Court
For the Northern District of California

which the Second Circuit held that federal law preempts state and local regulation of radio frequency interference. In *Freeman*, the defendants operated and used a radio transmission tower under an FCC license, and the question was whether a local zoning board had the authority to enforce a zoning permit condition requiring the defendants to remedy any radio frequency interference from tower signals with appliances and devices in local homes. The Second Circuit analyzed the FCA, the legislative history of the 1982 amendments to the FCA, and FCC regulations, in reaching its conclusion that "Congress intended the FCC to possess exclusive authority over technical matters related to radio broadcasting." *Id*. at 320. The court noted, *inter alia*, that the FCC had "exercised its rule-making power to extensively regulate the technologies involved in FM broadcasting," including "'FM blanketing interference,' which is the sort of interference complained of by the Homeowners." *Id*. at 321. The court also found it significant that the FCC itself had found, on several occasions, that local zoning permits and codes regulating radio frequency interference were preempted. *See id*. at 322 (discussing *Chevron* deference due to FCC's adjudicative interpretations). The *Freeman* court concluded that "allowing local zoning authorities to condition construction and use permits on any requirement to eliminate or remedy RF interference 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' in delegating regulatory power to the FCC for uniform regulation of broadcast technologies." *Id*. at 325 (quoting *Fidelity Federal Sav. and Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152 (1982)).

The Court finds that *Freeman* is distinguishable because plaintiff's state law claims, unlike the claims in *Freeman*, do not implicate the FCC's regulation of radio frequency interference, nor does plaintiff seek to impose any requirements on defendants that are in addition to or in any way inconsistent with FCC regulations regarding wireless routers. Instead, plaintiff claims that defendants misrepresented that their wireless routers meet FCC standards, and proving those claims does not "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Fidelity Savings & Loan Ass'n*, 458 U.S. at 152. In light of the FCA's savings clause, the nature of plaintiff's claims, and the absence of any authority holding that misrepresentation claims like

United States District Court
For the Northern District of California

1    those alleged by plaintiff are preempted, the Court concludes that plaintiff's state law claims are not

2    preempted. The other preemption cases cited by defendants are similarly distinguishable in that they all

3    involve claims of radio frequency interference, or eligibility under FCC regulations to participate in an

4    FCC auction. *See Southwestern Bell Wireless Inc. v. Johnson County Bd. of County Comm'rs*, 199 F.3d

5    1185, 1191 (10th Cir. 1999) (county zoning regulation involving radio frequency interference preempted

6    by federal law); *Broyde v. Gotham Tower, Inc.*, 13 F.3d 994, 997-98 (6th Cir. 1994) (preempting

7    nuisance claims over radio signal interference); *TPS Utilicom v. AT&T Corp.*, 223 F. Supp. 2d 1089,

8    1108 (unsuccessful bidder at FCC auction of wireless telecommunications spectrum licenses brought

9    claims against successful bidder alleging unfair competition and tortious interference; claims dismissed

10   pursuant to FCA section expressly preempting state regulation of market entry into

11   telecommunications); *Monfort v. Larson*, 693 N.Y.S.2d 286, 263-64 (N.Y. App. 1999) (preempting tort

12   claims over radio frequency interference); *Fetterman v. Green*, 689 A.2d 289, 293 (Pa. Super. 1997)

13   (same); *Smith v. Calvary Educ. Broadcasting Network*, 783 S.W.2d 533, 535-36 (Mo. App. 1990)

14   (same); *Blackburn v. Doubleday Broadcasting Co., Inc.*, 353 N.W.2d 550, 556-57 (Minn. 1984) (same).

15

16   **III.    Primary jurisdiction**

17       Alternatively, defendants contend that the Court should dismiss or stay plaintiff's claims

18   pursuant to the doctrine of primary jurisdiction.  The primary jurisdiction doctrine allows the court,

19   "under appropriate circumstances, [to] determine that the initial decisionmaking responsibility should

20   be performed by the relevant agency rather than the courts."  *Syntek Semiconductor Co., Ltd v.*

21   *Microchip Technology, Inc.*, 307 F.3d 775, 780 (9th Cir. 2002).  Although it is a discretionary question,

22   courts applying the doctrine traditionally have considered "(1) the need to resolve an issue that (2) has

23   been placed by Congress within the jurisdiction of an administrative body having regulatory authority

24   (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that

25   (4) requires expertise or uniformity in administration." *Id.* at 781. Where primary jurisdiction lies with

26   an agency, the court may stay the case pending administrative action or dismiss it without prejudice.

27

28

*Davel Commc'n, Inc. v. Qwest Corp.,* 460 F.3d 1075, 1091 (9th Cir. 2006).

Defendants' primary jurisdiction arguments are largely repetitive of the arguments discussed above. The Court declines to apply the doctrine because plaintiff's claims do not require the Court to interpret complex regulations, resolve technical issues or engage in policy judgments that require the expertise of the FCC.

## IV. Causation, damages, and allegations of false statements

Finally, defendants contend that the complaint does not sufficiently plead causation or damages because the complaint only alleges injury to consumers or the general public, and not to plaintiff. The Court disagrees, as the complaint alleges that as a result of defendants' misrepresentations, plaintiff has lost earnings and market share. *See* Compl. ¶ 58.

Defendants also argue that the allegations of false statements do not meet the requirements of Rule 9(b) because the complaint does not identify the "who, what, when, where, and how" of the alleged misrepresentations. However, the central allegation of the complaint is that defendants have falsely represented that their wireless routers comply with FCC standards because either the test results were falsified or defendants altered the routers after testing without permission from the FCC. The complaint identifies, *inter alia*, the specific wireless routers at issue, details about the testing by QuieTek and defendants' submission of those results to the FCC, the date of the FCC's approval, and the misrepresentations contained in users' guides and in product labeling logos. The Court finds that these allegations are sufficient.

///

11

**CONCLUSION**

For the foregoing reasons, the Court DENIES defendants' motion to dismiss the complaint. Docket No. 19. **The case management conference scheduled for 2:30 p.m. on December 13, 2013, remains on calendar.**


**IT IS SO ORDERED.**


Dated: December 12, 2013

_____
SUSAN ILLSTON
United States District Judge

**United States District Court**
For the Northern District of California

12